

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GIANG THUY NGUYEN,<br>Petitioner,<br>v.<br>SCOTT FRAUENHEIM,<br>Respondent. | Case No. SA CV 17-1526 FMO (JPR)<br><br>**ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

The court has reviewed the First Amended Petition for Habeas Corpus (Dkt. 49, "FAP"), records on file, and the Report and Recommendation of United States Magistrate Judge (Dkt. 51, "R&R"), which recommends that judgment be entered denying the FAP and dismissing this action with prejudice. (See id. at 77); 28 U.S.C. § 636(b)(1). On October 18, 2020, petitioner filed Objections to the Report and Recommendation [] (Dkt. 52, "Objections"), in which he reiterates the arguments raised in his FAP and Reply. (See id. at 6-12). Respondent did not respond to the Objections. Having reviewed the R&R and petitioner's Objections to the R&R, the court concludes as follows.

First, the court notes that the trial court and the California Court of Appeal applied the correct legal standard to petitioner's Batson challenge. The California Court of Appeal noted that "because appellants' trial occurred seven years after [Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410 (2005)] was decided, we presume the trial court applied the correct standard in

deciding Giang's Wheeler motion." People v. Johnson, 2016 WL 865485, *7 n. 8 (Cal. Ct. App. 2016). The trial court record, which the Magistrate Judge aptly quoted, supports the Court of Appeal's presumption. (See Dkt. 51, R&R at 33-34) ("[T]he trial court applied the correct standard, noting that Petitioner had to make only an 'initial,' 'prima facie showing' that the 'prosecutor [wa]s being prejudiced' and then finding 'under the totality of the circumstances' that a 'prima facie case was [not] made[.]'") (internal citations omitted).

Second, petitioner does not object to the Magistrate Judge's limitation of her inquiry to whether petitioner made a prima facie case of ethnicity-based discrimination given that "neither the Supreme Court nor the Ninth Circuit has recognized that combined race- or ethnicity-gender groups . . . may establish a cognizable group for Batson purposes." (Dkt. 51, R&R at 31-32); (see, generally, Dkt. 52, Objections at 6). Instead, petitioner objects without further explanation that the Magistrate Judge erred in finding that the presence of a woman with a Hispanic surname on the empaneled jury was some "proof" that the prosecutor "wasn't intentionally targeting jurors with Hispanic surnames[.]" (Dkt. 52, Objections at 6) (emphasis omitted). The trial court and the California Court of Appeal applied the same reasoning. (See Dkt. 15-32, Reporter's Transcript on Appeal (Augment) ("RT") at 303) ("[T]he Court will note that [the prosecutor] passed a number of times where we had Hispanic jurors sitting in the box. So under the totality of the circumstances, the Court doesn't believe a prima facie case was made."); see Johnson, 2016 WL 865485, at *9 ("[I]t is relevant that the prosecutor was willing to keep Garcia on the jury.").

The weight of the authority supports petitioner's argument that accepting a jury that includes members of the challenged group "does not refute the inference that when the prosecutor did make peremptory challenges, he [or she] did so in a purposefully discriminatory manner[.]" Williams v. Runnels, 432 F.3d 1102, 1109 (9th Cir. 2006); compare Sims v. Brown, 425 F.3d 560, 575 (9th Cir. 2005) ("[A]t least one Hispanic-surnamed member of the venire was empaneled. This might indicate that the prosecutor's motive was non-discriminatory.") and Fernandez v. Roe, 286 F.3d 1073, 1079 (9th Cir. 2002) (finding a prima facie case of discrimination against Latino prospective jurors where one Latino juror was seated; the seated juror's presence was "helpful to the State" but "not dispositive"), with Miller-El v. Dretke, 545 U.S. 231, 250, 125 S.Ct. 2317, 2330

(2005) (viewing skeptically the prosecutor's decision to accept one Black juror and explaining that a prosecutor might do so in an attempt "to obscure the otherwise consistent pattern of opposition to" seating Black jurors); Williams, 432 F.3d at 1109 ("It is true that the prosecutor accepted the jury, including African-American members, several times before he exercised his first peremptory challenge. This, however, does not refute the inference that when the prosecutor did make peremptory challenges, he did so in a purposefully discriminatory manner as evidenced by his use of three of his first four peremptory challenges to dismiss African-American jurors."); and Shirley v. Yates, 807 F.3d 1090, 1102 (9th Cir. 2015) ("That one black juror was eventually seated does weigh against an inference of discrimination, but only nominally so.") (internal quotation marks omitted).

Even if petitioner could thereby overcome the deference afforded to the state court's decision under 28 U.S.C. § 2254(d)(1), his claim would still fail. As the Magistrate Judge correctly observed, (see Dkt. 51, R&R at 39-41), a comparison of the struck, Hispanic-surnamed jurors with the accepted, non-Hispanic-surnamed jurors shows that the prosecutor did not engage in purposeful discrimination. See Flowers v. Mississippi, 139 S.Ct. 2228, 2248 (2019) ("Comparing prospective jurors who were struck and not struck can be an important step in determining whether a *Batson* violation occurred."); United States v. Mikhel, 889 F.3d 1003, 1031 (9th Cir. 2018) ("[W]e cannot say defendants have met their burden of demonstrating race was a 'substantial motivating factor' in the government's peremptory strike," in part because "the comparative analysis here provides little evidence of discriminatory intent"); United States v. Alvarez-Ulloa, 784 F.3d 558, 567 (9th Cir. 2015) ("[Defendant] does not point to any panelists not struck who . . . would have raised the same concern the government articulated as justification for its strike. . . . Thus, [defendant] cannot satisfy his burden of showing purposeful racial discrimination."); Briggs v. Grounds, 682 F.3d 1165, 1171, 1171 n. 6 (9th Cir. 2012) ("[T]he state appellate court . . . g[a]ve some specific reasons why the comparative analysis failed to show purposeful discrimination at [Batson's] step three. . . . [T]he district court evaluated the voir dire transcript, conducted comparative juror analysis where possible, and found that the state-court's determination was not objectively unreasonable."). Petitioner's claim likely would not succeed at

the final stage of the Batson analysis.

Finally, petitioner asserts that the Magistrate Judge "incorrectly indicate[d] the party at Ingrid's house took place the 'night before the shooting.'" (Dkt. 52, Objections at 6). But the purportedly incorrect language petitioner cites comes from the Court of Appeal's recitation of the facts, which the Magistrate Judge quoted in full. (See Dkt. 51, R&R at 5-16). More to the point, both the Court of Appeal and the Magistrate Judge recognized that Ingrid's party occurred on the same day as the botched robbery and that Viet was murdered in the early-morning hours after the party. (See id. at 7, 9-14, 49-50).

Having reviewed de novo those portions of the Report and Recommendation to which petitioner objects, the court agrees with and accepts the findings and recommendations of the Magistrate Judge. ACCORDINGLY, IT IS ORDERED THAT judgment be entered denying the First Amended Petition **(Document No. 49)** and dismissing this action with prejudice.

Dated this 23rd day of November, 2020.

/s/

Fernando M. Olguin
United States District Judge